SHAW, Judge.
Pursuant to a plea agreement with the State, Barry Lydell Conner pleaded guilty to escape in the third degree, a violation of § 13A-10-33, Ala.Code 1975. In accordance with the plea agreement, he was sentenced, as a habitual offender, to 10 years’ imprisonment; the sentence was split and he was ordered to serve 3 years in confinement followed by 5 years on probation.
Before pleading guilty, Conner expressly reserved the right to appeal the trial court’s denial of his motion to dismiss the indictment on the ground that his actions constituted the misdemeanor offense of failing to remain within the extended limits of confinement or failing to return to the place of confinement within the time prescribed, a violation of § 14-8-42, Ala.Code 1975, rather than the felony offense of escape in the third degree.
The record reflects that in 1999, Conner was convicted of robbery in the third degree and of theft of property in the second degree,[1] and he was placed on probation. On January 30, 2001, his probation was revoked. While waiting to be transferred to the custody of the Department of Corrections, Conner was housed in the Barbour County jail, where the sheriff allowed him to participate in the county’s work-release program. On March 4, 2001, after being informed that he would be transferred the following day, Conner went to his place of employment. However, when the van arrived at 7:10 p.m. to pick up the inmates and return them to the county jail, Conner was not at the work site. He turned himself in to authorities on March 12, 2001, and he was subsequently indicted for escape in the third degree.
Conner argues that because he was a state inmate on work release in county custody at the time he escaped, he could not be convicted of escape in the third degree under § 13A-10-33, but could be convicted only of the misdemeanor offense defined in § 14-8-42.
Section 14-8-42 provides:
“The willful failure of an inmate to remain within the extended limits of his confinement or to return to the place of confinement within the time prescribed shall be deemed an escape from a state penal institution in the case of a state inmate and an escape from the custody of the sheriff in the case of a county inmate and shall be punishable accordingly.”
This section is contained in Title 14, Chapter 8 — “Temporary Release Programs,” under Article 2 — “Work Release for County Inmates and State Inmates in County Custody.” (Emphasis added.) Section 14-8-43 provides that “[ajnyone violating any of the provisions of this article shall be guilty of a misdemeanor.”
With respect to § 14-8-42, “[tjhis court has consistently held that a ‘county inmate or a state inmate in county custody who *952 fails to return from work release is guilty of only a misdemeanor.’ ” Cork v. State, 603 So.2d 1127, 1128 (Ala.Crim.App.1992), quoting Webb v. State, 539 So.2d 343, 345 (Ala.Crim.App.1987)(some emphasis in Cork; some emphasis added). See also Moncrief v. State, 551 So.2d 1175 (Ala.Crim.App.1989); Nichols v. State, 518 So.2d 851, 852 (Ala.Crim.App.1987); Allen v. State, 481 So.2d 418, 419 (Ala.Crim.App.1985); and Alexander v. State, 475 So.2d 625 (Ala.Crim.App.1984), rev’d on other grounds, 475 So.2d 628 (Ala.1985).
However, in Webb, supra, this Court, in addressing an equal-protection challenge to the practice of treating state inmates in county custody — who can be convicted only of a misdemeanor for failing to return from work release — differently than state inmates in state custody — who can be convicted of felony escape for failing to return from work release — recognized that the Legislature had not defined “state inmates in county custody” for purposes of Title 14, Chapter 8, Article 2, and it construed that phrase to mean only those state inmates who are in county custody with the approval of the Department of Corrections:
“ ‘[A] classification made by a Legislature is presumed to be reasonable in the absence of clear and convincing indications to the contrary, and the person who assails it has the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary.’ Clark v. State, [284 Md. 260, 267,] 396 A.2d [243,] 247 [ (1979) ]. The Alabama legislature has classified ‘county inmates’ and ‘state inmates’ for purposes of work release as follows:
“‘(1) COUNTY INMATE: A person convicted of a crime and sentenced to a term of confinement of one year’s duration or less.
“ ‘STATE INMATE: A person convicted of a crime and sentenced to a term of confinement of more than one year’s duration.’
“Ala.Code (1975), § 14-8-30. Compare Ala.Code §§ 13A-l-2(3) (offense punishable by less than one year’s imprisonment is a misdemeanor) and 13A-l-2(4) (offense punished by more than one year’s imprisonment is a felony). By definition, therefore, a county inmate is a convicted misdemeanant and a state inmate, regardless of the location of his work release facility, is a convicted felon.
“Although the Alabama legislature has not defined ‘state inmates in county custody,’ it has authorized the Board of Corrections to promulgate rules concerning which state inmates may participate in county work release programs, Ala.Code (1975), § 14-8-31(c), and it has provided that only those state inmates ‘approved by’ the Board of Corrections may be held in county custody. See Ala. Code (1975), § 14-8-33(b).
“In the absence of any evidence to the contrary, we must assume that the Board of Corrections, to whom the legislature properly delegated the authority to classify ‘state inmates in county custody,’ transfers only low risk, non-dangerous felons to county custody. ‘When the classification in ... a law [assailed on equal protection grounds] is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed.’ Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 78-79, 31 S.Ct. 337, 340, 55 L.Ed. 369 (1911). Assuming, then, that the Board of Corrections exercises its discretion to transfer to county custody only those state inmates who present the least threat to society, the *953 differences in punishment for the crimes of escape from a work release center rest on a reasonable basis and cannot be said to be purely arbitrary. Lindsley, id. at 79, 31 S.Ct. at 340; [State v.] Spurlock, 393 So.2d [1052,] 1056 [ (Ala.Crim.App.1981) ]. We find nothing arbitrary in the legislature’s determination that a dangerous felon who fails to return to his work release center is guilty of a felony, while a misdemeanant or a non-dangerous felon who absconds from work release is guilty only of a misdemeanor. As the Colorado Supreme Court observed:
“ “We believe that there are a number of rational considerations which justify the classification scheme of our escape statute. These considerations include the reasonable belief on the part of the legislature that persons convicted of more grievous crimes present a greater threat to society requiring that a greater effort be made to deter their escape, and that persons convicted of more grievous crimes are generally sentenced to longer prison terms, increasing their motive to escape and requiring greater penalties to help deter such escapes.’
“People v. McKnight, 626 P.2d [678,] 684 (Colo.1981). To the extent that the Board of Corrections transfers state inmates to county facilities in order to relieve overcrowding at state facilities, there is a proper exercise of delegated authority and no denial of equal protection. See Clark v. State, 284 Md. 260, 396 A.2d 243, cert. denied, 444 U.S. 858, 100 S.Ct. 119, 62 L.Ed.2d 77 (1979). The legislature may, without violating the equal protection clause, provide a special punishment for a special class of offenders. Fowler v. State, 440 So.2d 1195, 1198 (Ala.Cr.App.1983); [State v. Spurlock], supra, 393 So.2d at 1056. Section 13A-10-31, as it applies to State work release inmates, does not deny equal protection of the laws.”
539 So.2d at 346-47. Thus, for purposes of § 14-8-42, “state inmates in county custody” include only those state inmates who have been transferred from state custody to county custody with the approval of the Department of Corrections.
In this case, although it is undisputed that Cornier was in county custody at the time of his escape, the record indicates that Conner was not transferred from state custody to county custody with the approval of the Department of Corrections. Rather, the record clearly shows, as the trial court correctly found, that Conner was in county custody only while waiting to be transferred to state custody and that his participation in the county’s work-release program was approved by the sheriff, not by the Department of Corrections. Therefore, Conner was not a “state inmate in county custody” as that term has been defined for purposes of § 14-8^42.
Section 13A-10-33(a) provides that “[a] person commits the offense of escape in the third degree if he escapes or attempts to escape from custody.” “Custody” is defined in § 13A-10-30(b)(l) as “[a] restraint or detention by a public servant pursuant to a lawful arrest, conviction or order of court, but does not include mere supervision of probation or parole, or constraint incidental to release on bail.” In Alexander, supra, this Court held that the term “custody” for purposes of the escape statutes includes work release programs because “ ‘work release programs are a form of “detention for law enforcement purposes.” ’ ” 475 So.2d at 627, quoting Commonwealth v. Brown, 261 Pa.Super. *954 240, 244, 396 A.2d 377, 379 (1978). Thus, when Conner left his place of employment, he escaped from “custody,” and he was properly indicted for and convicted of escape in the third degree pursuant to § 13A-10-33. The trial court properly denied Conner’s motion to dismiss.
Based on the foregoing, the judgment of the trial court is affirmed.
AFFIRMED.
McMILLAN, P.J., and COBB, BASCHAB, and WISE, JJ„ concur.

. We note that there is a discrepancy in the record as to this conviction. In his response to Conner’s motion to dismiss, the prosecutor stated that Conner had been convicted of theft of properly in the second degree. However, in its order denying the motion to dismiss, the trial court stated that Conner had been convicted of receiving stolen property.