PER CURIAM.
Johnnie Bouie appeals his conviction of first-degree murder and sentence of death. We have jurisdiction, article V, section 3(b)(1), Florida Constitution, and affirm his conviction but reduce his sentence to life imprisonment with no possibility of parole for twenty-five years.
Responding to a call that something might be wrong, sheriff’s deputies arrived at an uninhabited, lightly travelled portion of 11th Street in Daytona Beach around 11:30 p.m. on September 3, 1984. They found an abandoned car, bloody clothing, and, in a wooded area across the street from the car, the body of a woman who had been beaten and stabbed to death. Law enforcement personnel stopped Bouie the next morning as he walked along the road, *1114 took him in for questioning, and later arrested him for the victim’s murder.
According to Bouie’s statements and trial testimony, he agreed to drive the victim from Orlando to Daytona, but on the way one of his car’s tires started going flat. Unable to fix the tire, Bouie decided to return to Highway 92, but the wheel fell off the car. The victim then started making amorous advances toward him. As they walked along the road, a car stopped and two white men got out, one of whom started beating the victim. Bouie ran into the woods, became lost, and spent the night in the woods, only finding his way out in the morning.
Two motorists who drove through this area at approximately the time of the murder testified that they saw no other cars or people in the area. One stated that she saw a woman standing on top of a car, screaming and flailing something toward a man standing next to the car. Blood found on the victim’s body, clothes, and purse and on the car was consistent with Bouie’s; footprints found near the body were consistent with his shoe prints; and a bite mark on the victim’s arm matched Bouie’s teeth.
Bouie’s first trial in June 1987 ended in a mistrial when the jury failed to reach a unanimous verdict. After a retrial, the jury found Bouie guilty of first-degree murder and recommended the death penalty. The trial court agreed and sentenced Bouie to death.
Bouie raises six points on appeal, only two of which merit discussion.[1] The first issue we address concerns whether the trial court erred in refusing to grant a continuance and/or in denying counsel’s motion to withdraw.
On the second day of jury selection (Wednesday, January 27, 1988) inmate Bobby Edwards contacted the prosecutor's secretary and told her that, earlier that week, Bouie had confessed to Edwards while both men were in a holding cell. The prosecutor’s investigators then talked to Edwards. When they reported to the prosecutor about 3:00 p.m. Wednesday, he informed the court and defense counsel of Bouie’s confession. After discussing this matter with counsel, the court swore in the jury and the trial proceeded.
Defense counsel deposed Edwards on Wednesday evening and on Thursday evening deposed other inmates who had been in the holding cell.' The state called Edwards to testify on Friday afternoon. Defense counsel moved both for a continuance in order to investigate the confession issue further and for a mistrial. The court found no prejudice in the state’s handling of the matter, denied both motions, and allowed Edwards to testify. Defense counsel cross-examined Edwards and, during the defense’s case, presented four other inmates to rebut Edwards’ testimony.
Granting a continuance is within a trial court’s discretion, and the court’s ruling will be disturbed only when that discretion has been abused. Woods v. State, 490 So.2d 24 (Fla.), cert. denied, 479 U.S. 954, 107 S.Ct. 446, 93 L.Ed.2d 394 (1986); Lusk v. State, 446 So.2d 1038 (Fla.), cert. denied, 469 U.S. 873, 105 S.Ct. 229, 83 L.Ed.2d 158 (1984). We find no abuse of discretion here. The state’s good faith and diligence in this matter have been established. Moreover, although having only days to develop the confession issue, defense counsel used his time well. He effectively cross-examined Edwards and brought Edwards’ prior record to the jury’s attention. His examination of the other inmates also cast doubt on Edwards’ credibility and placed the question of whom to believe squarely before the jury. Bouie has shown no undue prejudice caused by the court’s ruling. We hold, therefore, that the trial court did not err by failing to grant the continuance.
Even if we were to find that the court erred in not granting a continuance, *1115 any such error would have been harmless. The record discloses that defense counsel performed adequately in regards to Edwards’ testimony. Even without Edwards’ testimony the evidence against Bouie clearly rebuts his trial testimony. We are certain, therefore, that the jailhouse confession, as recited by Edwards, did not contribute to Bouie’s conviction. As stated previously, Bouie has failed to demonstrate prejudice, and we can say beyond a reasonable doubt that not granting a continuance did not affect the verdict. State v. DiGuilio, 491 So.2d 1129 (Fla.1986).
After the court refused to grant a continuance, defense counsel, an assistant public defender, requested permission to withdraw from representing Bouie. Another assistant public defender from the same office had represented Edwards, and Bouie’s counsel claimed that allowing the public defender’s office to represent both men created a conflict of interest. Bouie now argues that the court erred by refusing to allow his counsel to withdraw.
The sixth amendment right to counsel assures fairness in adversarial criminal proceedings, United States v. Morrison, 449 U.S. 361, 101 S.Ct. 665, 66 L.Ed.2d 564 (1981), but a lawyer representing clients with conflicting interests cannot provide the adequate assistance required by that amendment. Holloway v. Arkansas, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978). As a general rule, a public defender’s office is the functional equivalent of a law firm. Different attorneys in the same public defender’s office cannot represent defendants with conflicting interests. Turner v. State, 340 So.2d 132 (Fla. 2d DCA 1976). To show a violation of the right to conflict-free counsel, however, “a defendant must establish that an actual conflict of interest adversely affected his lawyer’s performance.” Cuyler v. Sullivan, 446 U.S. 335, 350, 100 S.Ct. 1708, 1719, 64 L.Ed.2d 333 (1980). Bouie cannot meet this burden.
On Monday, January 25, 1988, the day Bouie confessed to him, Edwards pled guilty to an escape charge without reserving the right to appeal. Because he could not appeal, the public defender’s representation of Edwards effectively ended at that point. In essence, therefore, no one represented Edwards when he testified at Bouie’s trial. Bouie’s counsel cross-examined Edwards extensively and, if anything, zealously guarded Bouie’s interests at the expense of Edwards’. Edwards and Bouie were not codefendants, and their interests were neither hostile nor adverse to one another.[2] Webb v. State, 433 So.2d 496 (Fla.1983). Bouie’s counsel did not have a conflict of interest, and the court did not err in denying the motion to withdraw.
Our review of the record shows that Bouie’s conviction is supported by competent substantial evidence, and we affirm his conviction. Regarding his sentence, however, we find that it must be reduced to life imprisonment with no possibility of parole for twenty-five years.
Subsection 921.141(3), Florida Statutes (1987), provides as follows:
(3) FINDINGS IN SUPPORT OF SENTENCE OF DEATH.—Notwithstanding the recommendation of a majority of the jury, the court, after weighing the aggravating and mitigating circumstances, shall enter a sentence of life imprisonment or death, but if the court imposes a sentence of death, it shall set forth in writing its findings upon which the sentence of death is based as to the facts:
(a) That sufficient aggravating circumstances exist as enumerated in subsection (5), and
(b) That there are insufficient mitigating circumstances to outweigh the aggravating circumstances.
In each case in which the court imposes the death sentence, the determination of the court shall be supported by specific written findings of fact based upon the circumstances in subsections (5) and (6) and upon the records of the trial and the sentencing proceedings. If the court does not make the findings requiring the death sentence, the court shall impose *1116 sentence of life imprisonment in accordance with’§ 775.082.
We have visited this statutory requirement regarding written findings in support of a death sentence numerous times. A trial judge’s justifying a death sentence in writing provides “the opportunity for meaningful review” in this Court. State v. Dixon, 283 So.2d 1, 8 (Fla.1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1951, 40 L.Ed.2d 295 (1974); Van Royal v. State, 497 So.2d 625 (Fla.1986). Specific findings of fact based on the record must be made, Van Royal, and the trial judge must “independently weigh the aggravating and mitigating circumstances to determine whether the death penalty or a sentence of life imprisonment should be imposed.” Patterson v. State, 513 So.2d 1257, 1261 (Fla.1987) (emphasis omitted). Additionally, “all written orders imposing a death sentence [must] be prepared prior to the oral pronouncement of sentence for filing concurrent with the pronouncement.” Grossman v. State, 525 So.2d 833, 841 (Fla.1988), cert. denied, — U.S. -, 109 S.Ct. 1354, 103 L.Ed.2d 822 (1989).
In the instant case the trial court’s findings read as follows: “The court has considered the aggravating and mitigating circumstances presented in evidence in this cause and determines that sufficient aggravating circumstances exist, and that there are insufficient mitigating circumstances to outweigh the aggravating circumstances.” At the oral sentencing the court stated: “The Court has considered the aggravating and mitigating circumstances presented in the evidence in this case and determined that sufficient aggravating circumstances exist and that there are insufficient mitigating circumstances to outweigh the aggravating circumstances.”
Trial courts have been given considerable leeway in the timely filing of written findings which demonstrate the weighing of facts and the independent exercising of reasoned judgment needed to support a death sentence. E.g., Stewart v. State, 549 So.2d 171 (Fla.1989); Grossman; Patterson; Nibert v. State, 508 So.2d 1 (Fla.1987); Muehleman v. State, 503 So.2d 310 (Fla.), cert. denied, 484 U.S. 882, 108 S.Ct. 39, 98 L.Ed.2d 170 (1987); Cave v. State, 445 So.2d 341 (Fla.1984). The instant findings, however, are totally deficient. There is no indication of which aggravating circumstances and which mitigating circumstances, if any, were deemed applicable. Neither the oral nor the written findings recite any facts upon which the trial judge based Bouie’s sentence. They are merely conclu-sory statements which fail to show the independent weighing and reasoned judgment required by the statute and caselaw and do not meet our requirements. Because of the absence of the requisite findings, we therefore follow the statutory mandate and reduce Bouie’s sentence to life imprisonment with no possibility of parole for twenty-five years.
It is so ordered.
EHRLICH, C.J., and OVERTON, McDonald, SHAW and GRIMES, JJ., concur.
BARKETT, J., concurring specially with an opinion, in which KOGAN, J., concurs.

. We do not address the following issues: whether the trial court erred in denying a motion for acquittal; whether the trial court erred in admitting two photographs into evidence; whether the state and the trial court's actions and the jury instructions violated Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985); and whether Florida’s death penalty statute is unconstitutional.

. The trial court sentenced Edwards after accepting his plea. Nothing that would affect Edwards depended on his testifying against Bouie.